EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                          | 2021 TSPR 47     |
|                                 |                  |
| Julio M. Santiago Rodríguez     | 206 DPR _____    |

Número del Caso:  TS-6773


Fecha:  8 de abril de 2021



Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director


Abogada del Sr. Julio M. Santiago Rodríguez:

    Lcda. Daisy Calcaño López




Materia: La suspensión de la notaría será efectiva el 9 de abril de 2021, fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Julio M. Santiago Rodríguez          TS-6,773

*PER CURIAM*

En San Juan, Puerto Rico, a 8 de abril de 2021.

## I

El Lcdo. Julio M. Santiago Rodríguez (licenciado Santiago Rodríguez) fue admitido al ejercicio de la abogacía el 13 de mayo de 1980 y juramentó a la práctica de la notaría el día 29 de ese mes y año.

Durante el 2014, la obra protocolar del licenciado Santiago Rodríguez realizada entre 2003 al 2013 resultó objeto de examen por parte de la Lcda. Magda Girod Clavell, Inspectora de Protocolos y Notarías de la Oficina de Inspección de Notarías (ODIN). Luego de culminada la inspección, la inspectora rindió un informe preliminar de deficiencias. En específico, el señalamiento más significativo era respecto a la Escritura Núm. 132 de

Poder Especial autorizada el 22 de septiembre de 2003 (Escritura Núm. 132 de 2003). El instrumento público reflejó que uno de los poderdantes, el Sr. Juan Antonio Frau Saldaña (señor Frau Saldaña) era "un fallecido". Una vez notificado del hallazgo, el notario le manifestó a la ODIN que procuró conseguir los documentos relacionados a la autorización del instrumento público, intentó sin éxito localizar a la Sra. Elena Gandía Becerra (señora Gandía Becerra o apoderada) y, según investigó, supo que ésta vivía en España. Finalmente, expuso que realizaría las gestiones para localizar a la viuda del señor Frau Saldaña.

Luego de varios trámites preliminares sin que el notario realizara gestión alguna, el 10 de septiembre de 2020 la ODIN le notificó al notario el *Informe final de inspección* mediante el cual le concedió un plazo para expresarse respecto al señalamiento y le requirió la presentación de prueba sobre la notificación del otorgamiento de la escritura en el Registro de Poderes. En esa misma fecha, y con información provista por el Registro Demográfico, la ODIN corroboró que el poderdante falleció en el 1983 y que el número de seguro social plasmado en el instrumento público no correspondía al señor Frau Saldaña. Asimismo, el Registro de Poderes certificó que la Escritura Núm. 132 de 2003 no constaba inscrita en esa dependencia.

El 25 de septiembre de 2020 el licenciado Santiago Rodríguez respondió al *Informe final de inspección*. Allí, entre los asuntos expuestos, el notario aceptó los hallazgos esbozados por la ODIN; afirmó que no pensó que el descuido en la identidad de un otorgante afectaría su práctica notarial y que nunca había sido señalado sobre este particular. Además, recordó que la apoderada no entendió que para el instrumento

público autorizado tuviera eficacia debía estar inscrito en el Registro de Poderes; supo que la apoderada se mudó a España desde 2007 y los familiares no le brindaron la ayuda solicitada para localizarla. Asimismo, debido a que la señora Gandía Becerra prosiguió con la encomienda de apoderada sin éxito, reconoció que lo correcto hubiese sido cancelar la escritura de manera inmediata. Por último, admitió que visitó la ODIN de manera casual, sin procurar trámite ulterior alguno para subsanar la deficiencia.

A raíz de lo anterior, el Lcdo. Manuel E. Ávila De Jesús, Director de la ODIN, a través de un *Informe especial sobre incumplimiento de la ley notarial y su reglamento* (Informe especial) nos refirió las deficiencias notariales encontradas en la obra protocolar del licenciado Santiago Rodríguez. En éste expuso y concluyó que la conducta del notario de consignar en un instrumento público que el señor Frau Saldaña, fallecido en 1983, compareció ante él para otorgar un Poder Especial el 22 de septiembre de 2003, el no haber presentado prueba de que inscribió el mandato en el Registro de Poderes y el no haber justificado su omisión violentó los cánones 18, 35 y 38 de Ética Profesional, 4 LPRA Ap. IX. Según adujo, en la falta cometida por el letrado no hay espacio para excusarlo como un descuido. Así, en consideración a que en los 40 años de práctica del notario, éste no había sido objeto de señalamientos anteriores en su desempeño notarial y que se encontraba en la mejor de disposición de subsanar la deficiencia en la medida que fuera posible, nos recomendó una suspensión de tres meses, no sin antes que el notario contestara el *Informe especial*.

A esos efectos, emitimos una Resolución para que el notario se expresara en torno al *Informe especial*. El 24 de

marzo de 2021 y en cumplimiento con nuestra orden el licenciado Santiago Rodríguez compareció para, en esencia, notificar que se disculpó con la viuda del señor Frau Saldaña, reconocer la falta cometida conforme a las explicaciones sometidas y allanarse a la recomendación de la ODIN respecto a la suspensión del ejercicio de la notaría por un término de tres meses.

## II

Es un principio básico del derecho notarial que todo notario está rigurosamente atado al estricto cumplimiento de la Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*, conocida como Ley Notarial de Puerto Rico, al Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, Código de Ética Profesional, 4 LPRA Ap. IX y a cualquier otro cuerpo de normas o reglamentario concernientes a los deberes de los profesionales del Derecho.[1] Éstas son las fuentes de obligaciones para los abogados y notarios y su incumplimiento los expone a las sanciones disciplinarias que este Tribunal estime procedentes.[2]

La fe pública notarial emana precisamente del concepto del notario. Sobre este particular el Art. 2 de la Ley Notarial, *supra*, dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe

---

[1] In re Vázquez Margenat, 2020 TSPR 94, 204 DPR ____ (2020). Véanse Ley Núm. 62 de 8 de mayo de 1937, según enmendada, conocida como la Ley de Registro de Poderes; Reglamento del Tribunal Supremo de Puerto Rico, 4 LPRA XXI-B.

[2] In re Toro González II, 193 DPR 877, 889 (2015).

> pública al notario es plena respecto a los hechos que,
> en el ejercicio de su función personalmente ejecute o
> compruebe y también respecto a la forma, lugar, día y
> hora del otorgamiento.[3]

Una vez un abogado juramente como notario sabe que en el cumplimiento de la función notarial representa la fe pública y la ley para todas las partes y como tal tendrá que ser cuidadoso y desempeñar su ministerio con esmero, diligencia y estricto celo profesional.[4] La fe pública deja de ser plena respecto a los hechos que no sean comprobados por el notario o no los ejecute según los requisitos de forma que exige el ordenamiento notarial.

Los deberes impuestos a los notarios procuran proteger las garantías que ofrece este ministerio, cuyo verdadero propósito es el otorgamiento de instrumentos jurídicamente eficaces y legales.[5] El trámite o "[e]l proceso de autenticar y otorgar instrumentos públicos válidos es producto del cumplimiento fiel y cabal de los notarios con 'los requisitos de la ley notarial referentes a [la] comparecencia, exposición, estipulaciones, otorgamiento y autorización' para cada negocio jurídico en que intervienen".[6]

Para que los instrumentos públicos cobren eficacia uno de los requisitos que tiene el notario es asegurarse de la identidad de la persona otorgante por los medios que admite el ordenamiento notarial.[7] La identidad de compareciente no es un

---

[3] 4 LPRA sec. 2002.

[4] In re Vázquez Margenat, *supra*.

[5] In re Salas Davis, 145 DPR 539, 544-545 (1998).

[6] In re García Cabrera, 201 DPR 902, 920-921 (2019) citando Sucn. Santos v. Registrador, 108 DPR 831, 834 (1979).

[7] Véase Art. 17 de la Ley Notarial, 4 LPRA sec. 2035, Reglas 25 y 29 de Reglamento Notarial, 4 LPRA Ap. XXIV.

mero requisito, pues es el mecanismo que permite lograr la correspondencia real y legítima entre la persona otorgante y la firma en el instrumento público.[8]

Por otro lado, un notario tiene la obligación de remitir la notificación sobre el otorgamiento de un Poder Especial en el Registro de Poderes de la ODIN a partir de los tres días laborables de haber autorizado un mandato.[9] La inobservancia de un notario de cumplir rigurosamente con este requisito puede ocasionar perjuicios a los derechos de las personas y sobre las obligaciones contractuales que nacen de un instrumento público.[10] Además, crea un estado de incertidumbre en la medida que impacta la confiabilidad del sistema de registro de la ODIN, puesto que la información que emana del Registro de Poderes depende de lo que allí esté inscrito.[11]

En consecuencia, y como es sabido, quebranta la fe pública el notario que autoriza un instrumento público sin la presencia de uno los otorgantes.[12] A su vez, esto constituye la certificación de un hecho falso que no solo contraviene la Ley Notarial, *supra,* y el Reglamento Notarial, *supra*, sino además quebranta los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

Según el Canon 18, los profesionales del Derecho deben ejercer sus funciones de manera competente, cuidadosa y

---

[8] In re Ramos Vélez, 151 DPR 186, 189-190 (2000) citando a In re Cruz Cruz, 126 DPR 48, 451 (1990), además: In re Olmo Olmo, 113 DPR 441, 451-452 (1982); Sucn. Santos v. Registrador, 108 DPR 831, 837 (1979).

[9] Art. 3 de la Ley de Registro de Poderes, 4 LPRA sec. 922. Véase Reglas 59 a la 61 del Reglamento Notarial, supra; Regla 13(c) del Reglamento del Tribunal Supremo de Puerto Rico, 4 LPRA XXI-B.

[10] In re Santiago Ortiz, 191 DPR 950, 961 (2014).

[11] Íd.

[12] In re Vázquez Margenat, *supra*.

diligente.[13] Del Canon 35 se deriva que los notarios conduzcan su profesión con honestidad, por lo que una de las conductas más graves en la que puede incurrir un notario es faltar a la verdad, aunque no medie intención.[14] En línea con lo señalado, la falta de diligencia en el desempeño de la función notarial al consignar un hecho falso en un poder que tampoco se inscribió en el Registro de Poderes, a la vez, es una violación al Canon 38, pues con tal conducta no se honra a la profesión legal. Ciertamente, "no exalta la profesión legal el notario que no desempeñe con cautela y el celo que demanda la función pública del notariado".[15]

Luego del marco legal discutido resulta pertinente señalar que cuando este Tribunal se ve en la inexorable obligación de disciplinar a un miembro de la abogacía y la notaría, porque incurrió en conducta reñida con los postulados éticos que guían el desempeño en la profesión legal, se consideran los factores siguientes:

> (1) la reputación del abogado en la comunidad;(2) su historial previo; (3) si constituye su primera falta y si no ha causado perjuicio a alguna parte; (4) la aceptación y el arrepentimiento sincero por las imputaciones; (5) la defensa frívola de su conducta; (6) si se trata de una conducta aislada; (7) el ánimo de lucro, y (8) cualquier otra consideración atenuante o agravante aplicable a los hechos.[16]

## III

En la situación que nos ocupa, el licenciado Santiago Rodríguez lleva más de 40 años ejerciendo la notaría. Salta a nuestra vista que, previo al asunto ante nuestra consideración,

---

[13] 4 LPRA Ap. IX.

[14] In re Vázquez Margenat, *supra*.

[15] Íd.

[16] In re Bonhomme Meléndez, 202 DPR 610, 626 (2019) citando In re Rivera Nazario, 193 DPR 573, 587 (2015).

el licenciado Santiago Rodríguez no ha sido objeto de un procedimiento disciplinario relacionado a su función notarial. Además de ello, el notario reconoció que actuó en contravención al ordenamiento jurídico notarial y ético, confrontó su error al allanarse a los señalamientos y a la recomendación de la ODIN respecto a la conducta desplegada y la sanción sugerida. Además, reflexionó en lo concerniente a la correcta práctica de la notaría en cuanto a la atención y verificación de toda documentación, mostrando así el arrepentimiento de su acción.

A pesar de que este Tribunal no tiene la obligación de adoptar la recomendación de nuestros brazos auxiliares,[17] en esta ocasión coincidimos con que la consignación de la comparecencia de un otorgante que falleció 20 años antes de la autorización de una Escritura de Poder es una falta grave que no puede ser excusada como un descuido aunque la apoderada no haya tenido éxito en el intento de su desempeño.

**IV**

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se ordena la suspensión inmediata del Lcdo. Julio M. Santiago Rodríguez de la práctica de la notaría por el término de tres meses.

---

[17] La Regla 14(e) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, establece lo siguiente:

> (e) Una vez el tribunal reciba la recomendación del Procurador o Procuradora General o del Director o Directora de la Oficina de Inspección de Notarías, podrá ordenar el archivo y sobreseimiento de la queja, ordenar que se amplíe la investigación de la queja o someter el asunto a uno de sus jueces o juezas para la determinación de causa, quien informará su criterio y recomendaciones al pleno. El tribunal podrá imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando surjan de la propia contestación hechos que lo justifiquen. Luego de completado el trámite anterior, el tribunal podrá ordenar al Procurador o Procuradora General que presente la querella correspondiente.

La Oficina del Alguacil de este Tribunal inmediatamente incautará la obra protocolar y el sello notarial del licenciado Santiago Rodríguez y los entregará a la Oficina de Inspección de Notarías para la investigación e informe correspondientes. Consecuentemente, la fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados por el licenciado Santiago Rodríguez durante el periodo en que la fianza estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia mediante correo electrónico y por teléfono.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Julio M. Santiago Rodríguez          TS-6,773

*SENTENCIA*

En San Juan, Puerto Rico, a 8 de abril de 2021.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, se ordena la suspensión inmediata del Lcdo. Julio M. Santiago Rodríguez de la práctica de la notaría por el término de tres meses.

La Oficina del Alguacil de este Tribunal inmediatamente incautará la obra protocolar y el sello notarial del licenciado Santiago Rodríguez y los entregará a la Oficina de Inspección de Notarías para la investigación e informe correspondientes. Consecuentemente, la fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados por el licenciado Santiago Rodríguez durante el periodo en que la fianza estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia mediante correo electrónico y por teléfono.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo